## HOUGHTON v. HOUGHTON et al.

No. 25575. Nov. 10, 1936.

Utterback & Stinson and Priscilla W. Utterback, for plaintiff in error.

MacDonald & MacDonald, for defendants in error.

BAYLESS, J. This is an appeal from an action in the district court of Bryan county, Okla., between C. Z. Houghton, commonly called Joe, and A. M. Houghton, called Alvin, over certain business property in the city of Durant. Joe, the plaintiff, won, and Alvin has appealed.

The first assignment of errors argued relates to a motion and demurrer filed to the petition. This upon the theory that the petition failed to comply with section 592, O. S. 1931, because the title of plaintiff was not deraigned. The petition alleges the plaintiff "is the owner and is in the actual possession of" the property. There is no merit in the defendant's argument. We said in Hurst v. Hannah, 107 Okla. 3, 229 P. 163:

"Prior to filing answer in the case the defendants filed a demurrer to plaintiff's petition, which was overruled. Defendants contend that the court erred in overruling this demurrer because the plaintiff did not set forth in detail the facts relied upon to establish his claim, and did not attach to his petition copies of all deeds or other evidence of title in accordance with the provisions of section 467, Comp. Stat. 1921 (sec. 592, Okla. Stat. 1931). This action did not involve the recovery of real estate by the plaintiff, but was an action to quiet title under section 466, Comp. Stat. 1921, and the petition was sufficient to comply with the essential averments of the statute."

See, also, Roxaline Petroleum Co. v. Craig, 150 Okla. 148, 300 P. 620, and McGrath v. Durham, 151 Okla. 55, 1 P. (2d) 718.

The remaining assignments of error raise connected questions of law which turn entirely upon the evidence and can apply only if the findings of the court are against the the clear weight of the evidence. This is an equity case. We have examined the entire evidence, and have weighed it. See Clement Mtg. Co. v. Lewis, 122 Okla. 188, 253 P. 88.

The following is a summary of the facts: Mrs. Hatchett deeded the property to Alvin. A deed from Alvin to one Richardson appears of record. Richardson then deeded the property to Joe. Joe contends, and produced evidence to support: (1) That Alvin came to Durant in 1930, and was broke and he had to care for him: (2) that he owned several stores, but was in a failing condition; (3) that he wanted to furnish Alvin something to do, and suggested buying this property, building a filling station and letting Alvin run it; (4) that Alvin had left Ohio to avoid paying alimony to his wife and support money for his child, and both were fearful the Durant property might be seized for this judgment if Alvin carried it in his name (investigation allayed these fears); (5) Joe then had dealings with real estate agents looking to the purchase, had his attorneys examine the abstract of title, and paid for the property; he took the title in Alvin's name; (6) Joe dealt with carpenters, painters, electricians and plumbers, paid them in virtually all instances, dealt with the merchant from whom the furniture was bought and paid nearly all of the installments; (7) that he did not have the money to pay for the building materials and the labor, nor did Alvin, and when Joe's efforts to finance through mortgage companies failed, he mortgaged the property to the lumber company, and had Alvin deed the property to Richardson, a client of Joe's attorneys, to secure the money the attorneys had advanced on behalf of Richardson; (8) and Richardson later deeded to Joe.

Alvin's contention, and evidence to support it, is: (1) He came from Ohio after separating from his wife and family; (2) that he had $3,250 in cash, which he wished to invest in a business, if the business cou'd not be reached to satisfy the claims of his wife and children; (3) that Joe had this looked into and received a favorable report thereon; (4) that he and Joe talked over the matter, and decided to purchase the real estate, make it into a filling station, store, etc., and let Alvin conduct it; (5) that Joe

was intrusted with the dealings by which this was accomplished because he was better known locally and could get discounts, etc., which Alvin might not get; (6) that he gave Joe $2,750 of his money with which to pay for all of this, and kept the balance for his own use and expenses, although Joe and others testified, and Alvin admitted, Joe paid his living expenses from the time Alvin arrived at Durant; and (7) that he gave Joe an incomplete quitclaim deed to the property in order that Joe might use it to support his claim of title to the property if Alvin's Ohio creditors should come to Durant and try to enforce their claims against Alvin.

We are convinced that Alvin's testimony before the court in Ohio that he had no money or other means is supported by the evidence relating to his financial condition from all appearances when he arrived at Durant. Even if he had money when he arrived at Durant, but gave it to Joe and assumed the role of a person in financial straits, it was done for the purpose of deceit and to conceal his true financial condition from his family in Ohio to prevent them pursuing their judgment rights against him in Oklahoma. Therefore, he is without equity in the premises.

We are of the opinion that the findings of fact and the conclusions of law, and the judgment of the court thereon, are not against the clear weight of the evidence, but that the findings of fact and conclusions of law are clearly supported by the weight of the evidence. Having come to this conclusion, there is nothing left for us to do but affirm the judgment of the trial court.

Judgment affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur. RILEY, J., absent.